IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
        Plaintiff,

     vs.                                    No. 12-10085-11-JTM
                                            No. 19-10001-JTM

MARIA MACHUCA-QUINTANA,
        Defendant.

MEMORANDUM AND ORDER

In the first criminal case against the defendant Maria Machuca-Quintana, she pled guilty to conspiring to distribute cocaine and was sentenced to 60 (later reduced to 43) months in prison, followed by five years supervised release.[1] She was released from prison into the custody of the Probation Office in 2015. Four years later, the court revoked the supervised release based on various violations of the conditions of her release, in addition to her indictment on a new criminal charge of distribution of methamphetamine. On October 22, 2019, the court entered a revocation judgment of 12 months and 1 day imprisonment, to run consecutively to the sentence imposed in new criminal case.

---

[1] No. 12-10085-JTM, Dkt. 212, 213. The sentence was reduced based on a subsequently reduced guideline range. (Dkt. 351). The supervised release violations included and use of cocaine and alcohol, receipt of a ticket for an open container of alcohol, travel outside of the district without permission, association with a known convicted felon, failure to report for required substance abuse counseling.

In the new 2019 action, Machuca-Quintana pled guilty to distribution of more than 50 grams of methamphetamine on August 5, 2019. (Dkt. 25, 26). Defendant was then sentenced on October 11, 2019 to 144 months imprisonment followed by five years of supervised release.[2]

In both actions, the defendant has filed identical motions to vacate her convictions pursuant to 28 U.S.C. § 2255. In the both actions, she complains that her attorney was ineffective in failing to file a notice of appeal, that her attorney "failed to raise Defendants mitigating facts under 3553(a) as required by *Booker*," that her attorney failed to obtain an interpreter and suffered from a conflict of interest, and that there was a discrepancy between the weights of cocaine in the indictment and her plea. (Dkt. 467). For the reasons provided herein, the court denies defendant's motions.

In her plea in the first case, the defendant freely stated she "admits to knowingly committing the offense [conspiring to distribute cocaine], and to being guilty of this offense." No. 12-10085, Dkt. 213. In her petition to plead guilty, she wrote: "I represent to the Court that I did the following acts in connection with the charges made against me in Count 28 of the Indictment," and that "[f]rom May 3, 2011, through June 15, 2011, that I engaged in a conspiracy to distribute cocaine in the District of Kansas." (*Id*. at 1, ¶ 5.) More specifically, she agreed:

> I conspired with Juvenal Fernandez, Jr., Daniel Carrero, Mario Machuca and other unindicted coconspirators.

---

[2] Case No. 19-10001, Dkt. 34.

2

During that time period, agents with the Drug Enforcement Administration (DEA) were conducting Title III interceptions of telephones utilized by me. During those interceptions the DEA monitored numerous conversations between me and the named co-conspirators. Those conversations involved plans to obtain and distribute cocaine in Kansas. The DEA was also conducting physical surveillance during that time period that confirmed the existence of the cocaine distribution.

Additionally, days prior to June 12, 2011, I and Fernandez, Jr. conducted numerous conversations on the phone regarding the purchase and redistribution of 5 kilograms of cocaine. Fernandez Jr. suggested he could help me cut 5 kilograms of cocaine and make it 6 kilograms of cocaine for distribution. At the time, I had plans to receive 5 kilograms of cocaine, which was to be delivered by Daniel Carrero. I was intercepted on telephone conversations with my brother, Mario Machuca, discussing the purchase and transport of narcotics. Fernandez Jr. also offered to sell or rent a home to me in exchange for 1 kilogram of cocaine.

Title III interceptions and surveillance indicated that I and Daniel Carrero were in Texas on or about June 12, 2011, and were traveling back to Kansas. We were in separate vehicles, but were traveling in concert. Title III interceptions revealed the description of the vehicles each could be driving in. After the vehicle driven by Carrero entered Kansas, the Kansas Highway Patrol conducted a traffic stop. A subsequent search of the vehicle revealed 4,973 grams, approximately 5 kilograms, of cocaine. This coincided with the discussions between me and Fernandez Jr. about cutting the cocaine into 6 kilograms for re-distribution and the exchange of cocaine for a house down payment. Additionally, Fernandez Jr. has admitted receiving 21 ounces (588 grams) of cocaine from me for re-distribution.

(*Id.*)

Machuca-Quintana specifically agreed that her plea was free, voluntary, and with a full understanding of all matters set out in the Indictment and the petition to plead guilty. (Id., ¶ 23). By careful colloquy, the court determined that the plea was indeed free, voluntary, and knowing.

3

The Presentence Investigation Report accurately determined defendant's total offense level (31) and criminal history (Category I), with a resulting preliminary guideline imprisonment range of 108 months to 135 months. But because the statutory 10 year minimum, the actual guideline range was 120 months to 135 months. (Dkt. 261, ¶ 145). As indicated earlier, the court imposed a sentenced substantially below the guidelines advisory range sentence of 60 months and supervised release of 5 years.

In the Revocation Judgment in the first action, the court observed that "the defendant admitted guilt to violation of standard, mandatory and special conditions of the term of supervision," including cocaine use, possession of cocaine,  alcohol use, failure to obtain permission to travel outside the judicial district, association with a convicted felon without permission, failure to report law enforcement contact, failure to report for substance abuse counseling and submitting diluted urine samples, and commission of a federal crime. (Dkt. 465). The court imposed a sentence of 12 months and 1 day in prison, to run consecutively to the sentence imposed in the second action, Case No. 19--10001.

The record confirms that the defendant's plea in the second action was also knowing, free, and voluntary. The Plea Agreement (Dkt. 26) in Case No. 19-10001-JTM shows that Machuca-Quintana pled guilty "to Count 1 of the Indictment charging a violation of 21 U.S.C. § 841(a), that is, Distribution of More Than 50 Grams of Methamphetamine." Again, defendant agreed that "[b]y entering into this plea agreement, the defendant admits to knowingly committing the offense, and to being

guilty of this offense." (*Id.*)  She also admitted the essential facts of the offense, that "[o]n

August 16, 2018, in Wichita, Kansas, the defendant provided a confidential informant 892

grams of 100% (+/- 4%) pure methamphetamine in two bundles." (Id., ¶ 2). In her Petition

to Enter Plea of Guilty, defendant swore her plea of guilty was free, voluntary, and with

a full understanding of all matters related thereto (Dkt. 25). And again, after careful

questioning and colloquy, the court found that defendant pled guilty freely and

voluntarily, and not out of ignorance, fear, inadvertence or coercion, and with a full

understanding of the consequences. (*Id.*, at 7).

The Presentence Investigation Report (Dkt. 31) accurately calculated the

defendant's total offense level (33) and criminal history (Category III) with a guideline

range of 168 months to 210 months. On October 10, 2019, consistent with the terms of her

Rule 11(c)(1)(C) agreement, the court sentenced defendant (Dkt. 34) to 144 months

imprisonment followed by five years of supervised release.

In the Plea Agreements in both cases, the defendant freely agreed to waive any

appeal or collateral attack on her convictions:

> **Waiver of Appeal and Collateral Attack**. The defendant knowingly and
> voluntarily waives any right to appeal or collaterally attack any matter in
> connection with this prosecution, the defendant's conviction, or the
> components of the sentence to be imposed herein including the length and
> conditions of supervised release. The defendant is aware that Title 18,
> U.S.C. § 3742 affords a defendant the right to appeal the conviction and
> sentence imposed. By entering into this agreement, the defendant
> knowingly waives any right to appeal a sentence imposed which is within
> the guideline range determined appropriate by the Court. The defendant
> also waives any right to challenge a sentence or otherwise attempt to
> modify or change her sentence or manner in which it was determined in

any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the Court departs upwards from the applicable sentencing guideline range determined by the Court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counselor prosecutorial misconduct.

(Dkt. 213, ¶ 12). The Plea Agreement in the second case contains a substantially identical waiver. (Dkt. 26, ¶ 11).

A waiver of appeal rights is judged under the three-prong standard recognized in *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004), and consistent with that decision the district court will strictly construe appeal waivers "and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights." *Id*. The court looks to "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived h[er] appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice as we define herein." *Id*.

In both criminal actions, the court sentenced Machuca-Quintana consistent with the Plea Agreements, which waived all constitutional challenges to the validity of the Guidelines. The defendant agreed that the court would determine the relevant sentencing

facts by a preponderance of the evidence, that the court would determine the final Guideline range, and that only the court would determine the final sentence. Defendant acknowledged the government could not and had not made any promise or representation as to that sentence.

In the second action, the court imposed a sentence identical to the agreed-upon proposed sentence. Machuca-Quintana knowingly and voluntarily waived any right to appeal or collaterally attack "any matter in connection with this prosecution, her conviction, or the components of the sentence to be imposed." The court confirmed this waiver by specific inquiry:

> THE COURT: But if you go forward with a guilty plea with this plea agreement, you're going to be giving up your right to appeal. Do you understand that?
>
> THE DEFENDANT: I understand.

(Dkt. 468, at 9). The present collateral attack on defendant's convictions fall squarely within the scope of the waivers of appellate rights.

Second, the court finds that defendant has failed to show the waiver was not knowing or voluntary. *See United States v. Vidal*, 561 F.3d 1113, 1118 (10th Cir. 2009) ("The defendant bears the burden of proving that the waiver was not knowing and voluntary."). In both cases, the Petitions to Enter Plea of Guilty and the Plea Agreements were made knowingly, freely, and voluntarily. She pled guilty because she agreed she was guilty, and expressly disavowed receiving any prediction or promise of a lighter sentence. She acknowledged that she had had time to discuss all aspects of the case with

counsel, that she was satisfied with counsel, and that she read the plea agreement, fully understood it, and that she agreed it was true. At the hearing on her plea, the defendant was aware and understood what she was doing:

> THE COURT: Are you guilty of this offense?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Is there any other reason that you're pleading guilty?
>
> THE DEFENDANT: No, Your Honor.

(Dkt. 468, at 12). The defendant's pleas were knowing and voluntary.

Finally, the circumstances of the present case do not present any miscarriage of justice. In this context, a miscarriage of justice arises if (1) the district court relied upon an impermissible factor such as race; (2) the defendant received ineffective assistance of counsel in plea negotiations, rendering the waiver invalid; (3) the defendant's sentence exceeded the statutory maximum; and (4) the waiver is otherwise unlawful. *Hahn*, 359 F.3d at 1327. "The burden rests with the defendant to demonstrate that the appeal waiver results in a miscarriage of justice." *United States v. White*, 584 F.3d 935, 948 (10th Cir. 2009) (citations omitted).

In sentencing the defendant, the court did not rely on an impermissible factor such as the Machuca-Quintana's race. There is no evidence at all that defendant received ineffective assistance of counsel during the course of the plea negotiations. The court confirmed before accepting the negotiated pleas that defendant understood the effects of her plea, that she was satisfied with her attorney, and understood the court alone would

8

determine her sentence. The court then imposed sentences which were sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and protect the public from further crimes by defendant. At the revocation hearing, the court discussed in detail each of the alleged supervised release violations. The court stated:

> I've considered the nature and circumstances of these violations, your characteristics, and the sentencing objectives required by statute. I've also considered the non-advisory-- or the nonbinding, advisory Chapter 7 policy statements. I find revocation is mandatory pursuant to statute based on your possession of a controlled substance.

(Dkt. 46, at 16). Ultimately, the court  concluded it was "a pretty good laundry list of conditions that you violated that you just admitted to." (*Id.*)

The defendant has failed to show the existence of any error which seriously affected the fairness, integrity, or public reputation of the judicial proceedings resulting in a miscarriage of justice

Finally, the court finds that the defendant's conclusory claims of ineffective assistance of counsel do not warrant any different result. Such a claim requires two essential showings – that counsel provided deficient performance, and that this resulted in prejudice to the defendant. *See Strickland v. Washington*, 466 U.S. 668 (1984).

Here, the defendant has failed to show any specific actions by her counsel which were constitutionally ineffective. The defendant pled guilty freely and voluntarily, knowing that the sentences to be imposed would be determined solely by the court. She

9

agreed she was satisfied with counsel, agreed she understood the nature and consequences of her pleas, and agreed no one promised her the court would impose any given sentence. The defendant stated that she "has read the plea agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion," that "I fully understand every charge made against me," that "I believe that my lawyer is fully informed on all such matters" relating to the charges against her, that "[m]y lawyer has counseled and advised me on the nature of each charge, on all lesser included charges, and on all possible defenses that I might have in this case," that "I believe that my lawyer has done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help he has given me," and that A"I have read, understood, and discussed with my attorney, each and every part of this Petition to Plea Guilty, and that the answers which appear in every part of this Petition are true and correct." (Dkt. 26). The defendant confirmed these representations to the court at the August 8, 2019 and October 10, 2019 hearings on her pleas. (Dkt. 46, 468).

Moreover, the court finds defendant has failed to demonstrate any prejudice from the alleged deficient performance. Prejudice to a defendant only arises where there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). No such probability exists here. In both cases, the government possessed strong evidence of the defendant's guilt, and defendant freely and voluntarily conceded her guilt. The defendant received reasonable sentences under the Guidelines and consistent with the

nature of the offenses. Given the evidence and the circumstances of the case, there is no reasonable probability in either case that any deficiencies would have actually caused defendant to refused to plead and have insisted on a trial.

The court accordingly grants the government's motions consistent with the waivers in the plea agreements to dismiss the two § 2255 motions. Given this record—including the defendant's own sworn testimony indicating her satisfaction with counsel and the free and voluntary nature of her pleas—the court finds that an evidentiary hearing on defendant's motions would not produce a different result. Further, the court declines to issue any certificate of appealability. Such a certificate may be granted where the defendant has made a substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253(c)(2), or has raised an issue that is debatable among jurist of reason or deserving of further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the defendant has made no substantial showing of any denial of a constitutional right, and—again, given her own voluntary representations to the court during her pleas— the court finds that that reasonable jurists would not consider the defendant's present claims were not in fact freely and voluntarily waived.

IT IS ACCORDINGLY ORDERED this day of October, 2020, that the defendant's Motions to Vacate (No. 12-10085-11, Dkt. 467; No. 19-10001-JTM, Dkt. 43) are hereby dismissed.

*J. Thomas Marten*
J. Thomas Marten, Judge

11